Best Cheese Corp. v All-Ways Forwarding Intl., Inc. (2004 NY Slip Op 24203)

Best Cheese Corp. v All-Ways Forwarding Intl., Inc.

2004 NY Slip Op 24203 [4 Misc 3d 487]

June 10, 2004

Supreme Court, Westchester County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 13, 2004

[*1]
Best Cheese Corporation, Plaintiff,
v
All-Ways Forwarding International, Inc., et al., Defendants and Third-Party Plaintiffs. Hapag-Lloyd Container Line GmbH et al., Third-Party Defendants.
Supreme Court, Westchester County, June 10, 2004

APPEARANCES OF COUNSEL

Friedman, Harfenist & Langer, Lake Success (Steven J. Harfenist of counsel), for plaintiff. Cichanowicz, Callan, Keane, Vengro & Taxtor, LLP, New York City (Patrick M. DeCharles, II, of counsel), for defendants and third-party plaintiffs. Fowler Rodriguez & Chalos, Port Washington (Eugene J. O'Connor of counsel), for third-party defendants.

{**4 Misc 3d at 487} OPINION OF THE COURT

John R. LaCava, J.
[*2]
{**4 Misc 3d at 488}In September 2001, Best Cheese Corporation contracted with All-Ways Forwarding International, Inc. to act as freight forwarder of shipments of cheese from Gauda, Slovakia, to the United States. In turn, All-Ways contracted with Maritime Freight America, Corp. (MFA) to provide the ocean transport.
As per these contractual arrangements, during August and September 2002, All-Ways arranged with MFA to send four shipments of cheese from Slovakia to the United States. Thereafter, MFA contracted with third-party defendants Hapag-Lloyd Container Line GmbH and Hapag-Lloyd (America) Inc. (hereinafter HLCL or defendants) to perform the actual ocean transport of the goods. In connection with that arrangement, Maritime Freight Forwarders, a nonparty Austrian corporation, executed HLCL's sea waybills in Vienna, Austria, listing MFA as consignee. This established HLCL as carrier of the subject cheese from Bremerhaven, Germany, the "port of loading," to New York, New York, the "port of discharge" as noted on the waybills. The four cargoes of cheese were eventually delivered, allegedly in damaged condition, to the Port of Newark, New Jersey.
The main action was commenced by Best Cheese against All-Ways and MFA to recover $245,900.89 for, among other things, the loss of the cheese. All-Ways and MFA then commenced the third-party action against HLCL, the actual carrier, wherein they seek to recover for damages they may be required to pay Best Cheese, as well as their own legal costs.
Third-party defendant HLCL seeks the dismissal of the action and the transfer of proceedings to the courts of Hamburg, Germany. This is required, HLCL argues, since the waybills contain a mandatory forum selection clause which provides, in pertinent part: "any claim or dispute arising under [the waybills] shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg Courts to the exclusion of the jurisdiction of the courts of any other place . . . ."
In response, All-Ways and MFA argue that, despite the express provisions of the forum selection clause as found in the waybills, jurisdiction is properly placed at the "port of discharge." They note that the waybills were issued in Vienna, Austria, and that Austria is a signatory to the United Nations Convention on Carriage of Goods by Sea of 1978 (the Hamburg Rules). As such, they argue that the proper application of the jurisdictional section of the Hamburg Rules (art 21, § 1 [c]) renders the forum selection clause void and unenforceable.{**4 Misc 3d at 489}
Even assuming without so finding that the Hamburg Rules apply to the exclusion of the contractual forum selection clause, the proper application of the Hamburg Rules does not give the third-party plaintiff the option of selecting New York as one of the jurisdictions in which to litigate the underlying controversy. As such, jurisdiction here is misplaced.
Section 1 of article 21 of the Hamburg Rules provides, in pertinent part:
"In judicial proceedings relating to carriage of goods under this Convention the plaintiff, at his option, may institute an action in a court which, according to the law of the State where the court is situated, is competent and within the jurisdiction of which is situated one of the following places: . . .
"(c) . . . the port of discharge . . . ."
While All-Ways and MFA point to the "port of discharge" as listed on the waybills to establish the proper jurisdiction of the court, the term "port of discharge" as used in section 1 (c) of article 21 of the Hamburg Rules must be interpreted and applied to mean actual port of discharge, here, the Port of Newark, New Jersey, not simply that which is listed on the waybills.
The term "port of discharge" is mentioned no fewer than 10 times in the Hamburg Rules. In some instances, the term is qualified to mean "port of discharge provided for in the contract" (see, e.g., art 5, § 2). At other times, such as in the jurisdictional clause (art 21, § 1 [c]), no such qualification exists. As to these unqualified references, including most particularly section 1 (c) of article 21, the court concludes that the term "port of discharge" can only logically mean the actual port of discharge (see, e.g. art 4, § 1 [carrier of goods is responsible during the period "which the carrier is in charge of the goods at the port of loading, during the carriage and at the port of discharge"]; art 4, § 2 [b] ["the carrier is deemed to be in charge of the goods . . . (ii) by placing them at the disposal of the consignee in accordance with the contract or with the law or with the usage of the particular trade, applicable at the port of discharge, or (iii) by handing over the goods to an authority or other third party whom, pursuant to law or regulations applicable at the port of discharge, the goods must be handed over"]; art 15, § 1 [n] [bill of lading must include the "date or the period of delivery of the goods at the port of discharge . . .").
Although the shipments of cheese may have been destined, on paper, for New York, New York, they were, in fact, discharged,{**4 Misc 3d at 490} in Newark, New Jersey, the actual port of discharge. It is there, Newark, New Jersey, in contrast to New York, where one may very well determine what may have caused the alleged damage to the cargobe it by way of examination of the ship, the conditions under which the shipments were made, the freight, and/or witnesses to the carriage or unloading. New York offers no such nexus to the controversy. Likewise, New York offers no nexus to those being sued (art 21, § 1 [a]), to the place where the contracts were made (art 21, § 1 [b]), or to the port of loading (art 21, § 1 [c]). Nor is New York anywhere designated as a choice of jurisdiction (art 21, § 1 [d]). The fact that the first-party action is properly placed here is of no consequence (Flanagan v Acme Scaffold Co., 277 App Div 988 [2d Dept 1950], rearg denied 277 App Div 1006 [1950]; Black v Oberle Rentals, 55 Misc 2d 398 [Sup Ct, Onondaga County [*3]1967]). Nor does it matter that proceedings in Germany may very well be time-barred.
In addition, it is not only logical, but is equally practical, that one of the grounds for the application of the Hamburg Rulesthe actual path of the goods in question (see, art 2, § 1 [c] [Hamburg Rules are applicable where "one of the optional ports of discharge provided for in the contract of carriage by sea is the actual port of discharge and such port is located in a Contracting State"])would also serve as a basis for jurisdiction.
Based upon the foregoing, it is hereby ordered that the motion is granted to the extent that the proceedings before this court are hereby dismissed without prejudice to the proper and timely commencement of an action before one of the jurisdictions allowed in section 1 of article 21 of the Hamburg Rules where, among other things, a court with proper jurisdiction can definitively rule upon whether the Hamburg Rules in fact apply and, if so, what bearing that may have on the choice of law and/or proper jurisdiction of the case (as between the jurisdiction mandated in the forum selection clause and any of those permitted in section 1 of article 21 of the Hamburg Rules).